UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-21200-CIV-HUCK/BANDSTRA

KEVIN FORBES,

    Plaintiff,

v.

CITY OF NORTH MIAMI,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Kevin Forbes, a Black Jamaican male, brings this action against the City of North Miami ("North Miami") pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01 *et seq.* Mr. Forbes asserts claims of unlawful race discrimination and retaliation, as well as a violation of due process. This matter is presently before the Court on North Miami's Motion for Summary Judgment (D.E. # 37), filed January 11, 2012. North Miami seeks summary judgment on Mr. Forbes' claims of race discrimination and retaliation. For the reasons discussed below, the Court finds that there is no genuine issue of material fact as to Mr. Forbes' discrimination and retaliation claims, and that North Miami is entitled to judgment as a matter of law on Counts I through IV.[1]

**I.    BACKGROUND**

Mr. Forbes began his career with North Miami as a part-time lifeguard in 1981, and became a code enforcement officer in 1995. His duties as a code enforcement officer included inspecting properties, investigating complaints of ordinance violations, and preparing reports. Mr. Forbes received reprimands in his capacity as a code enforcement officer at various times in

---

[1] The Court has scheduled a hearing on the remaining claim in Count V (Declaratory and Other Relief). As Count V was not a subject of the Motion for Summary Judgment, the Court confines its analysis to the race discrimination and retaliation claims set forth in Counts I through IV.

2001, 2002, and 2006. In 2005, he unsuccessfully applied for the position of Code Administrator, but eventually received a non-competitive appointment to that position in 2007. While he held the position of Code Administrator, Mr. Forbes received high performance ratings from his direct supervisor, Code Director Michael J. Ferrucci.

As a consequence of budget considerations, as well as a perceived lack of effectiveness, North Miami eliminated the positions of Code Director and Code Administrator in September 2009, and created the new position of Code Enforcement Manager.[2] Mr. Forbes and several other applicants applied for the newly-created position. The application process involved an interview by a three-member panel, which asked identical questions of all the applicants, and then assigned a numerical score based on the quality of the applicant's response to each question. The score sheets were then tallied by North Miami's personnel department which ranked the applicants on the overall quality of their interviews. Mr. Forbes received an overall score that placed him third out of six applicants. The applicant with the second-highest score was Vanessa Willis, an African-American female. The applicant with the highest overall score, Alan Graham, was ultimately chosen to fill the position by North Miami's Interim Deputy City Manager/Director of Public Works Mark Collins. Both Mr. Graham and Mr. Collins are white.

After his unsuccessful application for the Code Enforcement Manager position, and the elimination of his position of Code Administrator, Mr. Forbes was "rolled back" to his previous position of code enforcement officer as provided for by North Miami's civil service rules. However, Mr. Forbes contends that his rollback to code enforcement officer was improper because, under the city's civil service rules, he was entitled to "bump" a less-senior employee at the same pay grade. Specifically, Mr. Forbes alleges that he should have been entitled to replace Zoning Administrator Joanne Martin, because the position of Zoning Administrator is similar to that of Code Administrator, both positions are at the same pay grade, and Ms. Martin has less seniority than Mr. Forbes. Ms. Martin is also white.

---

[2] On September 10, 2009, then-City Manager Clarence Patterson informed the City Council that "I have not seen the performance [by the Code Department] that I was looking for. . . . As a result, I'm asking it be put down to Code [Enforcement] Manager and let it function that way under the Deputy [City] Manager." Council Mtg. Minutes (D.E. # 74-1), at 10-11. When Mr. Patterson was asked why the two additional officers (the Code Director and Code Administrator) were not needed, Mr. Patterson replied that "I haven't seen any effective, efficient Code Enforcement in the field." Id. at 12.

2

After reverting back to a code enforcement officer in October 2009, the relationship between Mr. Forbes and his new supervisor, Mr. Graham, began to deteriorate. Beginning in November 2009, Mr. Graham informed Mr. Forbes on multiple occasions of numerous deficiencies in his work product. Specifically, on November 23, 2009, Mr. Graham notified Mr. Forbes that Mr. Forbes had not filed his end-of-month report for October 2009, and that no entries of code violations were made into the city's code violation database in October or November of 2009. According to the city, the timely entry of code violations into this database is critical because it is the mechanism by which the city organizes, tracks, and adjudicates code violations. On December 9, 2009, Mr. Graham again informed Mr. Forbes that he had not submitted his November 2009 end-of-month report. On December 10, Mr. Graham sent another e-mail to Mr. Forbes expressing concern that Mr. Forbes had not entered any new code violations into the city's database. In this e-mail, Mr. Graham referenced the previous discussions he had with Mr. Forbes regarding Mr. Forbes' inadequate work product. Mr. Graham directed Mr. Forbes to devote a set period of time to back-enter code violations, which Mr. Forbes had reported observing, into the city's database. Mr. Forbes did not respond to this e-mail until he was specifically requested to do so by Mr. Graham on December 13.

On February 2, 2010, Mr. Forbes filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and the Florida Commission on Human Relations (FCHR), alleging racial discrimination based on the city's failure to promote him, and its failure to bump another employee in favor of Mr. Forbes under the city's applicable civil service rules. Specifically, Mr. Forbes alleged that North Miami had discriminated against him by failing to promote him to Code Enforcement Manager, and for refusing to bump Ms. Martin despite her lower seniority. Mr. Forbes alleges that he informed Mr. Graham of the EEOC complaint. Mr. Graham, however, testified that he first learned of Mr. Forbes' EEOC complaint after Mr. Forbes left North Miami's employ.

Mr. Forbes continued to receive complaints about his work product in the months following his EEOC complaint. On February 9, 2010, Mr. Graham expressed concern over Mr. Forbes' large number of outstanding open cases. He directed Mr. Forbes not to open any new cases, but rather to concentrate on reducing his current caseload by "scheduling follow-up inspections, issuing notice of violation letters, issuing civil violation tickets, setting cases for enforcement hearings, and submitting maintenance and service order packet[s]." Feb. 9, 2010 E-

3

mail (D.E. # 38-13), at 6.  Mr. Graham also directed Mr. Forbes to record all of his activities in the city's database.  Rather than respond to the Mr. Graham's specific directive, and how he would comply, Mr. Forbes instead responded to Mr. Graham: "Alan, I do not appreciate you sending me an e-mail with directive [sic] of how to do my job.  How I achieve compliance and how I enforce the city codes in my assigned area is [sic] of my discretion."  Feb. 10, 2010 E-mail (D.E. # 38-13), at 7.

On February 24, 2010, Mr. Forbes received a written reprimand outlining the numerous performance-related concerns Mr. Graham had communicated to Mr. Forbes over the preceding months, including discrepancies in his data entries, duplicative data entries, and failure to follow up with several open cases.  Mr. Graham continued to issue complaints to Mr. Forbes regarding his performance after the reprimand was issued.  On April 26, 2010, Mr. Graham wrote to Mr. Forbes seeking an explanation of why Mr. Forbes had not furnished requested documentation regarding two zoning violation appeal hearings.  Mr. Graham also requested an activity report from Mr. Forbes on April 26, 2010 and again on May 2, 2010.  Mr. Graham subsequently expressed concern that Mr. Forbes only opened one new case in May 2010, and that "there was little to no follow-up on the 116 cases going back to March and April of this year."  June 5, 2010 E-mail (D.E. # 38-14), at 4.  On June 14, 2010, Mr. Graham again informed Mr. Forbes that his work was unacceptable.  Specifically, Mr. Graham pointed to eighty-six of Mr. Forbes' cases that had not been resolved, including several that had been outstanding for three to four months.

Although he did not have authority to terminate employees, on July 9, 2010 Mr. Graham informed Mr. Forbes that he was recommending Mr. Forbes' termination.  Mr. Graham further criticized Mr. Forbes for opening and closing "a few selected cases without bringing any failed cases forward for enforcement action before the Special Magistrate or Code Enforcement Board."  July 9, 2010 Letter (D.E. # 74-3), at 28.  Mr. Graham also noted that Mr. Forbes had not complied with numerous directives, had missed meetings, and had opened zoning violation cases without actually going to the property to observe the alleged infraction.  Mr. Forbes was ultimately terminated on July 19, 2010 by Rebecca Jones, North Miami's Director of Personnel Administration, with the City Manager's approval.

Mr. Forbes commenced the instant action on April 6, 2011.  The Complaint alleges five counts against North Miami: racial discrimination in violation of Title VII (Count I); racial discrimination in violation of the FCRA (Count II); retaliation in violation of Title VII (Count

III); retaliation in violation of the FCRA (Count IV); and deprivation of due process in violation of the Fifth and Fourteenth Amendments and the Florida Constitution for failing to provide him with an appeal of the city's termination decision (Count V).  Mr. Forbes alleges racial discrimination on two separate grounds: North Miami's failure to promote him to the position of Code Enforcement Manager, and North Miami's refusal to bump Ms. Martin.  Mr. Forbes also claims that North Miami retaliated against him because of his EEOC Charge of Discrimination by issuing a written reprimand that began the progressive discipline process that ultimately culminated in his termination.

In its Motion for Summary Judgment, North Miami argues that it is entitled to final summary judgment on Mr. Forbes' discrimination and retaliation claims.  Specifically, North Miami argues that Mr. Forbes cannot demonstrate that North Miami's stated reasons for promoting Mr. Graham rather than Mr. Forbes, and its refusal to bump Ms. Martin in favor of Mr. Forbes, were pretext.  North Miami also argues that Mr. Forbes cannot establish a prima facie case of retaliation or pretext.  For the reasons discussed below, the Court grants North Miami's Motion for Summary Judgment on Mr. Forbes' claims of discrimination and retaliation.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "material" if it is a legal element of the claim under applicable substantive law, and might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if a rational trier of fact may find for the non-moving party based on the record taken as a whole.  *Allen*, 121 F.3d at 646.  In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party.  *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1374 (11th Cir. 1996).

The movant bears the initial responsibility of informing the Court of the basis for its motion, and the particular parts of the record demonstrating the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir.

5

2008). Once the movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id*. (citing *Celotex*, 477 U.S. at 322). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in its favor. *Shiver*, 549 F.3d at 1343. If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## III.   ANALYSIS

### A.   Race Discrimination Claims

Mr. Forbes asserts that he was the victim of racial discrimination by North Miami for (1) failing to promote him, and (2) for refusing to bump a junior employee, in violation of Title VII and the FCRA.[3] Title VII provides a civil remedy for employees who are victims of discrimination in the workplace by making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a summary judgment motion is before the Court in a Title VII case involving circumstantial

---

[3] The FCRA is patterned after Title VII; thus Title VII case law is applicable to claims brought under the FCRA. The Court therefore need not analyze the claims separately. *See Smith v. Naples Cmty. Hosp., Inc*., 433 F. App'x 797, 799 (11th Cir. 2011) (citing *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA)); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (internal citations omitted) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. No Florida court has interpreted the Florida statute to impose substantive liability where Title VII does not.").

6

evidence, the Court analyzes the case under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *Greer v. Birmingham Beverage Co.*, 291 F. App'x 943, 944 (11th Cir. 2008); *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

Under the *McDonnell Douglas* framework, Mr. Forbes must first establish a prima facie case of discrimination by submitting "evidence to allow a reasonable jury to determine that he has satisfied the elements of his prima facie case." *Greer*, 291 F. App'x at 944 (citing *McDonnell Douglas*, 411 U.S. at 802). To establish a prima facie case of discrimination under Title VII for failure to promote, an employee must show that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected; and (4) the position was filled by someone outside of his protected class. *Watkins v. Sec'y Dep't of Homeland Sec.*, 401 F. App'x 461, 466 (11th Cir. 2010) (citing *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998)); *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (listing the elements of a failure to promote claim). If Mr. Forbes establishes a prima facie case of discrimination, a rebuttable presumption arises that North Miami unlawfully discriminated against him, thereby shifting the burden to North Miami "to articulate a legitimate, nondiscriminatory reason for the employment decision." *Greer*, 291 F. App'x at 944 (citing *McDonnell Douglas*, 411 U.S. at 802-03). "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325-26 (11th Cir. 2011). The employer's articulated reason is legitimate as long as it is honestly and reasonably held. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470-71 (11th Cir. 1991). The burden on the employer to rebut a prima facie case of discrimination is light, requiring only that "the [employer] produce, not prove, a nondiscriminatory reason." *Walker*, 53 F.3d at 1556.

If North Miami is able to proffer a legitimate, nondiscriminatory reason for its employment decision, the burden then shifts back to Mr. Forbes to show that this reason was pretextual. *Greer*, 291 F. App'x at 944 (citing *McDonnell Douglas*, 411 U.S. at 804). "It is at this stage that the plaintiff's 'burden . . . merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" *Smith*, 644 F.3d at 1327 (quoting *Burdine*, 450 U.S. at 256). "[I]n order to show pretext, the plaintiff must demonstrate

7

such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Goodman v. Georgia Southwestern*, 147 F. App'x 888, 891 (11th Cir. 2005) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)); *see also Humphrey v. Sears, Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1375-76 (S.D. Fla. 2002). However, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (internal citations omitted). Although the same evidence used to establish a prima facie case can be used to cast doubt on an employer's proffered motive, "the plaintiff cannot simply stand on her prima facie case; instead, she must convince the court that the evidence in the case as a whole preponderates in favor of a finding of intentional discrimination by the defendant." *Mortham*, 158 F.3d at 1184-85, 1184 n.12.

North Miami has properly conceded that Mr. Forbes has established a prima facie case of discrimination. *See* Def. Mot. Summ. J., at 6. Thus, under the burden-shifting test outlined in *McDonnell Douglas* and its progeny, North Miami must offer a legitimate, nondiscriminatory reason for its employment decision. Should North Miami meet this burden of production, Mr. Forbes must offer evidence to establish that North Miami's reason was merely pretext for discrimination. As Mr. Forbes' failure to promote claim and refusal to bump claim have separate factual bases, the Court analyzes the merits of each claim individually.

### 1. Failure to Promote

North Miami has offered a legitimate, nondiscriminatory reason for selecting Mr. Graham as the Code Enforcement Manager—that he was the most qualified candidate of the six applicants. The interview scores reflect the highest score for Mr. Graham, and that based on the applicants' relative scores, he was the successful candidate.[4] As stated above, North Miami's

---

[4] As indicated above, Mr. Forbes did not have the second highest score among the applicants. That score was given to Vanessa Willis, an African-American female. North Miami has established that Ms. Willis was not hired for the Code Enforcement Manager position because of her relative lack of supervisory experience. Def. Stmt. of Facts (D.E. # 38), ¶¶ 16-17; Collins Aff. (D.E. # 38-8), at 2. Mr. Forbes has not offered any contrary evidence.

hiring process for the Code Enforcement Manager position involved an interview with a three-member panel that asked identical questions to each applicant. Each of the interviewers submitted affidavits attesting that (1) race played no factor in their consideration of each applicant, (2) all applicants were asked identical questions, (3) the ranking of applicants was done by North Miami's personnel department, and (4) Mr. Graham's final ranking as the top candidate was consistent with his performance in his interview. *See* Geimer Aff. (D.E. # 37-1), at 1-2; Calloway Aff. (D.E. # 37-1), at 3-4; Warren Aff. (D.E. # 37-1), 5-6. Moreover, the interview score sheets submitted into evidence indicate that Mr. Graham received noticeably higher marks than did Mr. Forbes. One interviewer remarked that Mr. Graham was "well prepared for interview [with] handouts and graphs." Score Sheet (D.E. # 37-2), at 3. The Court also notes that none of the interviewers' scores were anomalous—no particular interviewer gave a considerably lower or higher score to any particular candidate vis-à-vis the other interviewers.

After the score sheets were tallied by North Miami's personnel department, and the overall quality of each candidate's interview was determined, the scores were transmitted to Mr. Collins, North Miami's Interim Deputy City Manager/Director of Public Works. *See* Sept. 24, 2009 E-mail (D.E. # 78-5), at 1. Mr. Collins informed the Assistant Director of Personnel Administration that "I have selected Alan Graham who was rated number one from the interviews to fill the Code Enforcement Managers [sic] new position." *Id*. Mr. Collins also testified that he believed that Mr. Graham was the best candidate to lead the Code Enforcement Division. Collins Aff. (D.E. # 38-8), at 2; Collins Depo. (D.E. # 78-1), at 38. Mr. Collins also stated that both Mr. Graham and Mr. Forbes had previously worked under his direction, and that he had to discipline Mr. Forbes for "his behavior as it related to his supervisor." Collins Aff., at 1. Mr. Collins was also of the opinion that Mr. Forbes "lacks good interpersonal skills and has exhibited problems with authoritative positions." *Id*.

Mr. Forbes alleges that North Miami's reason for hiring Mr. Graham was merely pretext to racial discrimination. First, Mr. Forbes argues that pretext is evidenced by the high marks he received on his pervious performance reviews as Code Administrator. *See* Ferrucci Aff. (D.E. # 74-1), at 3; Performance Eval. (D.E. # 74-1), at 6-7. However, evidence that a plaintiff was qualified for a position is rarely sufficient to demonstrate pretext "unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1254 (11th Cir. 2000) (quoting *Deines v. Texas Dep't of Protective and*

9

*Regulatory Servs.,* 164 F.3d 277, 280 (5th Cir. 1999)); *accord Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000); *Rogers-Libert v. Miami-Dade County*, 184 F. Supp. 2d 1273, 1279 (S.D. Fla. 2001). Tellingly, Mr. Forbes does not dispute Mr. Graham's strong qualifications for the position of Code Enforcement Manager. Indeed, Mr. Graham previously served as Police Chief of Mulberry, Florida, and was Division Commander of the City of North Miami Beach Police Department. Graham Depo. (D.E. # 78-2), at 8. As the Eleventh Circuit explained in *Alexander v. Fulton County*, a "plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race . . . 'a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.'" *Alexander*, 207 F.3d at 1339 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)). Here, Mr. Forbes has not shown that North Miami's employment decision was motivated by race, and has not established pretext by showing that he previously received a favorable employment evaluation. Indeed, the city acknowledges that he was qualified.

Mr. Forbes also argues that North Miami's reasons for promoting Mr. Graham were pretextual because Mr. Forbes was told by Maxine Calloway that she heard Mr. Collins state that "hell would freeze over" before he would promote Mr. Forbes. Forbes Decl. (D.E. # 75), at 6. This comment, however, is inadmissible and therefore is not considered by the Court because this statement is hearsay. Mr. Forbes offers no supporting testimony from Ms. Calloway who allegedly overheard the comment.[5] Furthermore, even if this statement were considered, Mr. Collins expressly disputes making such a comment. *See* Collins Depo. (D.E. # 78-1), at 14. Moreover, this alleged statement is not probative as to any racial motivation or bias on the part of Mr. Collins. Indeed, Mr. Forbes admits that he does not know of any statements made by any North Miami official that would indicate that he was discriminated against based on his race, and in what context Mr. Collins' alleged statement was made. Interrog. (D.E. # 38-1), at 2. This

---

[5] Mr. Forbes did not offer any testimony from Ms. Calloway attesting that Mr. Collins made this alleged statement. However, North Miami offered Ms. Calloway's affidavit which states, *inter alia*, that "Mr. Graham's final ranking as number one was consistent with his performance during his interview," and that her evaluation of the applicants was not racially motivated. Calloway Aff. (D.E. # 37-1), at 4.

10

alleged statement, even if it is admissible, is insufficient to demonstrate pretext, or to create a question of material fact for a jury's consideration.

Mr. Forbes' remaining arguments are also insufficient to establish pretext of racial discrimination. Mr. Forbes argues that pretext can be demonstrated because Mr. Collins "praised" Mr. Graham, and assisted in the reorganization of the Code Enforcement Division that eliminated Mr. Forbes' previous position of Code Administrator. However, Mr. Forbes does not elaborate, and the Court does not deduce, how racial motivation can be established from these assertions. With regard to Mr. Graham's praise, North Miami acknowledges that Mr. Forbes was qualified, and the record indicates that former City Manager Clarence Patterson recommended to the City Council that the department be reorganized, and the Code Director and Code Administrator positions be eliminated in light of the city's budget and a perceived lack of effectiveness. Council Mtg. Minutes, at 10-11. Mr. Collins admits in his deposition that he "worked with the city manager" and recommended that code enforcement become its own department within the city. Collins Depo. (D.E. # 74-1), at 22. However, when asked about whether he was involved in any discussions about the elimination of Mr. Forbes' job, Mr. Collins testified that he wasn't employed by the city at the time. *Id*. at 23. The record fails to show any evidence of pretext or racial motivation on the part of North Miami. Therefore, North Miami is entitled to summary judgment on Mr. Forbes claim of racial discrimination based on his failure to be promoted.

### 2. *Failure to Bump*

Mr. Forbes also asserts that he was the victim of racial discrimination based on North Miami's refusal to bump an employee with a lower layoff score, as provided for by North Miami's civil service rules. However, Mr. Forbes misconstrues the applicable rule. Rule XIII of North Miami's Civil Service Rules provides in relevant part:

> Layoff shall be restricted to found to have [sic] the lowest layoff score in the classification(s) identified by the City Manager. The laid off employee shall be entitled to fill any existing vacancy in the City which he/she is eligible [sic].
>
> Should there be no vacancy, the employee with the lowest layoff score shall be entitled to replace the employee with the lowest layoff score City-wide. Such action shall be designated as a

11

> "rollback". A laid off employee shall have the right to replace another employee (with a lower layoff score), *provided that the laid off employee held regular status in the lower classification*. Such action shall also be designated as a "rollback" or a "bump".

North Miami Civ. Serv. R. XIII K(1) (D.E. # 38-9), at 9-10 (emphasis added). Mr. Forbes argues that he, as a code enforcement officer and former Code Administrator, was entitled to bump Joanne Martin the Zoning Administrator. As North Miami concedes that Mr. Forbes has established a prima facie case of racial discrimination, the burden now falls upon North Miami to proffer a legitimate, nondiscriminatory reason for its refusal to bump Ms. Martin.

      North Miami proffers two legitimate, nondiscriminatory reasons for its refusal to bump Ms. Martin. First, North Miami asserts that under its civil service rules, an employee must have previously held the position to be qualified to bump into it. *See* Jones Depo. (D.E. # 78-8), at 64. Second, North Miami asserts that the positions of Code Administrator and Zoning Administrator are significantly different, and because of these differences, Mr. Forbes was not entitled to bump Ms. Martin. *See* Gonzalez Depo. (D.E. # 78-7), at 26. North Miami asserts that under its civil service rules, Mr. Forbes was entitled to be rolled back to the lower position in which he held regular status, that of code enforcement officer.

      Mr. Forbes asserts that these reasons are merely pretext to racial discrimination because the positions of Zoning Administrator and Code Administrator are similar. However, Mr. Forbes does not base this assertion on competent, admissible evidence, but rather relies solely on his unsupported, conclusory statement that the Zoning Administrator and Code Administrator positions are materially the same because both positions involve interpreting city codes, and both positions were combined in one person until approximately 1999. Forbes Decl. (D.E. # 75), at 4. Furthermore, the applicable rule requires that the bumping employee "held regular status in the lower classification" in order to bump. Mr. Forbes admits in his deposition that he never held the position of Zoning Administrator. Forbes Depo. (D.E. # 78-6), at 152. Mr. Forbes also admits that he did not prepare ordinances and regulations involving land use, that he never worked with the board of adjustment, and that he does not hold a bachelor's degree in public administration, urban development, or urban or regional planning, all of which are requirements of the position of Zoning Administrator. *Id.* at 154-56; *see also* Zoning Admin. Job Description (D.E. # 75), at 17-18. Mr. Forbes' unsupported statement that the positions were sufficiently similar to permit him to bump Ms. Martin is not supported by the record and is insufficient to

12

establish pretext of racial discrimination. Accordingly, North Miami is entitled to summary judgment on Mr. Forbes' claim of racial discrimination on the grounds that he was entitled to bump Ms. Martin.

### B. Retaliation Claim

North Miami also argues that summary judgment is appropriate with respect to Mr. Forbes' claim that North Miami retaliated against him for filing his Charge of Discrimination with the EEOC on February 2, 2010. North Miami contends that Mr. Forbes cannot establish a prima facie case of retaliation. North Miami also argues that even if Mr. Forbes can establish a prima facie case of retaliation, North Miami legitimately terminated Mr. Forbes without regard to the filing of his Charge of Discrimination. For the reasons discussed below, the Court finds that Mr. Forbes has not established a prima facie case of retaliation, and assuming *arguendo* that a prime facie case for retaliation exists, Mr. Forbes has not demonstrated that his reprimand or termination were pretext for retaliation.

Title VII and the FCRA's anti-retaliation clauses prohibit an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7).[6] An employee may pursue a claim for retaliation even if the employee's complaints of discrimination are ultimately meritless, so long as the employee has a "good faith, reasonable belief that challenged practices violate Title VII." *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137 (5th Cir. Unit A Sept. 1981)); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("retaliation is a separate offense under Title VII; an employee need not prove the underlying claims of discrimination for the retaliation claim to succeed"); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

"As with claims of substantive discrimination, Title VII retaliation claims require that '[o]nce the plaintiff establishes [a] prima facie case, the employer must proffer a legitimate, non-

---

[6] The Court again analyzes Mr. Forbes' retaliations claims under Title VII and the FCRA together.

13

discriminatory reason for the adverse employment action. If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.'" *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)). "A reason is not pretext for [retaliation] 'unless it is shown both that the reason was false, and that [retaliation] was the real reason.'" *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). An employee can meet this burden "'either directly by persuading the Court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). However, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simple quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

North Miami contends that Mr. Forbes cannot establish a prima facie case of retaliation. To establish a prima facie case of retaliation under Title VII, Mr. Forbes must show (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse employment action; and (3) that there was some casual relationship between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Holifield*, 115 F.3d at 1566. North Miami concedes that Mr. Forbes engaged in statutorily protected speech when he filed a Charge of Discrimination with the EEOC. However, North Miami argues that a casual relationship between Mr. Forbes' statutorily-protected speech and any adverse employment action is lacking. Specifically, North Miami argues (1) that a five month period between Mr. Forbes' filing the Charge of Discrimination and his termination does not support a reasonable inference of a casual relationship, and (2) that Mr. Forbes' February 24, 2010 reprimand was not an adverse employment action within the meaning of Title VII.

> 1. *Mr. Forbes' Cannot Establish a Prima Facie Case of Retaliation*

To establish the casual relationship element of his prima facie case for the employment decisions that occurred after his February 2, 2010 EEOC filing, Mr. Forbes "need only show

14

'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).  Generally, the presence of a casual relationship can be shown by a close temporal connection between the protected expression and a termination.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  However, this temporal proximity must be very close.  If "there is a substantial delay between the protected expression and the adverse action," and an "absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."  *Id*.  North Miami points out that the Eleventh Circuit held in *Higdon* that a three month period between the protected expression and the alleged retaliatory action did "not allow a reasonable inference of a casual relation between the protected expression and the adverse action."  *Id*. at 1221 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  North Miami contends that because five months elapsed between Mr. Forbes' Charge of Discrimination and his termination, any close temporal proximity is lacking.

Mr. Forbes must therefore establish that his written reprimand of February 24, 2010—filed three weeks after filing his Charge of Discrimination—is an adverse employment action. To establish the adverse employment action element of a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).  The Supreme Court has held that "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Id*. at 69.  North Miami contends that this reprimand should not be considered an adverse employment action because Mr. Forbes did not suffer "a materially adverse change in the terms and conditions of employment."  Def. Mot. Summ. J., at 12.  The Court agrees; under the particular circumstances of the present case, Mr. Forbes' reprimand was not an adverse employment action.

In order to demonstrate that Mr. Forbes' reprimand was an adverse employment action, Mr. Forbes has offered evidence that North Miami uses a progressive discipline process whereby an oral reprimand is followed by a written reprimand, suspension, and finally termination. Collins Depo. (D.E. # 74-1), at 36-37; Jones Depo. (D.E. # 74-3), at 16-17, 19; Graham Depo.

15

(D.E. # 74-2), at 44.  Although it is not compulsory under every circumstance, there is evidence to suggest that North Miami's progressive discipline process is followed "in most cases" for performance-related issues.  *See* Jones Depo., at 17.  Mr. Forbes argues that his reprimand should be viewed as the opening salvo of a progressive discipline process that culminated in his termination.  *See, e.g., Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012) ("given [the employee's] claim that [the employer] 'ignored' him in December 2003 when he requested information regarding the detail, . . . it appears that [the employer] actually took a first step toward the adverse action just two months after [the employee] filed his formal complaint"); *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 888 (8th Cir. 2008) (holding a reasonable jury could find that there was a pattern of adverse actions against the plaintiff beginning shortly after the time he complained and lasting until he was laid off).  According to Mr. Forbes, a prima facie case of retaliation is established by the close temporal proximity between his EEOC Charge of Discrimination and the adverse employment action (*i.e.* his reprimand).

The Court does not agree with Mr. Forbes' argument.  While his reprimand may serve as a component of North Miami's progressive discipline process, Mr. Forbes' performance-related problems, which were the subject of his reprimand, extended well prior to February 24, 2010.  As mentioned above, Mr. Graham had expressed multiple concerns over Mr. Forbes' deficient work product beginning November 23, 2009.  In numerous e-mails, Mr. Graham instructed Mr. Forbes to correct ongoing deficiencies in his job performance, including promptly entering data into the city's zoning violation database.  These same work deficiencies also continued throughout the period after Mr. Forbes filed his EEOC Charge of Discrimination.  These concerns are properly seen as legitimate responses to a continuing pattern of deficient work.  The record does not indicate that there was an onset of adverse employment actions by North Miami after Mr. Forbes filed an EEOC complaint that would be consistent with a retaliatory intent.  To the contrary, the record simply reflects a continuation of the city's expressed concerns similar to those pre-EEOC complaint, not a change in its attitude toward Mr. Forbes.

"The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms."  *Burlington Northern*, 548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).  The anti-retaliation provision does so by "prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers."  *Id*. (quoting *Robinson*, 519 U.S. at

16

346). Here, Mr. Forbes was informed of numerous deficiencies in his work product identified by his superior over the three months prior to his EEOC complaint. A critical review of an employee's work product in and of itself would not deter a reasonable employee from making or supporting a charge of discrimination. On the contrary, a reasonable employee who received numerous warnings about his work product may be more inclined to expect such a review. Under the circumstances of this case, Mr. Forbes' reprimand was not an adverse employment action within the meaning of Title VII. The five month period between Mr. Forbes' termination and his EEOC Charge of Discrimination does not support a casual connection between Mr. Forbes' EEOC complaint and his termination, or an inference of retaliation by North Miami. *See Higdon*, 393 F.3d at 1220. Accordingly, the Court holds that Mr. Forbes has not established a prima facie case of retaliation, and therefore North Miami is entitled to summary judgment on Mr. Forbes' retaliation claim.

### 2. *Evidence of Pretext of Retaliation is also Lacking*

However, assuming *arguendo* that such a prima facie case of retaliation has been established, North Miami has offered several legitimate, nondiscriminatory reasons for its decision. North Miami contends that Mr. Forbes exhibited "numerous instances of incompetency or inefficiency in the performance of assigned tasks or duties" and "fail[ed] to obey any lawful and reasonable direction given by a supervisor when such violation or failure to obey amounts to insubordination or serious breach of discipline." Mot. for Summ. J., at 13. Both before and after filing his EEOC complaint, Mr. Forbes, as a code enforcement officer, was required to enter data regarding code violations he observed immediately into the city's database. Yet, Mr. Forbes' entries did not correspond with the number of cases he actually opened or verbally reported. *See* Reprimand (D.E. # 37-6), at 1; Dec. 10, 2009 E-mail (D.E. # 37-7), at 3. As a result of this discrepancy, Mr. Forbes duplicated thirty-eight identical violations at the same property, and failed to follow up on thirty-two separate violations of overgrown grass, swales, and trash. Reprimand, at 2-3. Furthermore, regarding the discrepancies in reporting, Mr. Graham noted that in February 2010, the number of cases which Mr. Forbes reported as closed exceeded the number of inspections he reported, leading Mr. Graham to conclude that Mr. Forbes was closing cases for violations without performing an inspection of the property. Graham Depo. (D.E. # 78-2), at 86-87.

17

As discussed above, these concerns were first raised by Mr. Graham in November 2009, three months prior to Mr. Forbes' reprimand. *See, e.g.,* Nov. 23, 2009 E-mail (D.E. # 38-13), at 1. In numerous e-mails, Mr. Forbes was given instructions as to his questionable work product, the manner in which he entered data into the city's database, and the submission of missing documentation. The record does not reflect that Mr. Forbes either disputed his work deficiencies at any time, or engaged Mr. Graham on possible strategies for improvement. Rather, Mr. Forbes responded to Mr. Graham in one e-mail by stating "I do not appreciate you sending me an e-mail with directive [sic] of how to do my job. How I achieve compliance and how I enforce the city codes in my assigned area is [sic] of my discretion." Feb. 10, 2010 E-mail (D.E. # 38-13), at 7.

Mr. Forbes argues that pretext is demonstrated because he was as productive as any other code enforcement officers. He offers several raw database statistics that indicate that he was opening and closing more cases than several other code enforcement officers. *See* Caseload Statistics (D.E. # 74-2), at 44-50. Indeed, Mr. Graham concedes that the case load statistics indicate that Mr. Forbes opened and closed more cases at various times than several other code enforcement officers. Graham Depo, (D.E. # 74-2), at 20, 24-25, 28, 35-36. Mr. Graham also states that the statistics indicate that Mr. Forbes was "as productive as any other officer" at various times in 2009 and 2010. *Id*. at 29-30. This, according to Mr. Forbes, indicates that his reprimand and termination were merely pretext to retaliation.

The record clearly indicates that Mr. Forbes opened and closed a significant number of cases as a code enforcement officer. Unfortunately for Mr. Forbes, he has not refuted any allegations regarding *how* he was improperly closing and accounting for such cases, or the allegation of insubordination toward his supervisor Mr. Graham. When "the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Palmer v. Albertson's LLC*, 418 F. App'x 885, 887 (11th Cir. 2011) (quoting *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007)). Here, Mr. Forbes does not dispute the charge that his data entries were deficient, as the city contends. Indeed, Mr. Forbes acknowledges that he had difficulty with North Miami's data recording system used in managing records of his work. Forbes Decl. (D.E. # 75), at 6; Gonzalez Depo. (D.E. # 78-7), at 25. Mr. Forbes also does not dispute that his overall performance is properly measured by considerations other than simply the number of cases closed (*e.g*. proper recording of critical information, following instructions or working well with

others, etc.). Mr. Forbes also does not dispute North Miami's charge of insubordination. Furthermore, the record is clear that it was not Mr. Graham who terminated Mr. Forbes, but rather North Miami's Director of Personnel Administration, Rebecca Jones, upon approval of the City Manager. *See* Jones Depo. (D.E. # 78-8), at 23 ("I did the termination with the permission of the city manager"); Graham Depo. (D.E. # 78-2), at 47 ("I have no authority to fire anyone"). Because Mr. Forbes has not rebutted each of North Miami's nondiscriminatory reasons for his reprimand and termination, Mr. Forbes has not demonstrated that North Miami's proffered explanations for his termination were pretextual. Therefore, even if Mr. Forbes had established a prima facie case, North Miami is still entitled to summary judgment on Mr. Forbes' retaliation claims.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (D.E. # 37) is GRANTED as to Counts I through IV.

ORDERED AND DONE, in Chambers, Miami, Florida, April 4, 2012.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of record